FILED
United States Court of Appeals
Tenth Circuit

May 27, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

KIRK DOUGLAS BYRD,

      Petitioner-Appellant,

v.

RANDALL WORKMAN, Warden,

      Respondent-Appellee.

No. 09-5146

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:06-CV-00251-CVE-FHM)

Barry A. Schwartz, Assistant Federal Public Defender (Raymond P. Moore,
Federal Public Defender, with him on the briefs), Denver, Colorado, for
Petitioner-Appellant.

Keeley L. Harris, Assistant Attorney General (W.A. Drew Edmondson, Attorney
General, with her on the brief), Oklahoma City, Oklahoma, for Respondent-
Appellee.

Before **TACHA**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

      Petitioner Kirk Douglas Byrd, an Oklahoma state prisoner currently serving

a fifty-five-year sentence, appeals from the district court's denial of his 28 U.S.C.

§ 2254 habeas petition. Mr. Byrd alleges that he received ineffective assistance of counsel because his trial counsel (1) failed to investigate whether his prior felony convictions would be admissible for purposes of enhancing his sentence under Oklahoma's repeat-offender statute, and (2) introduced all of his prior convictions to the jury when three of them were otherwise inadmissible. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

In April 2004, Mr. Byrd was charged in a ten-count amended information with, *inter alia*, Unlawful Possession of a Controlled Drug, Driving Under the Influence ("DUI") of Intoxicating Liquor—Second Offense,[1] Assault and Battery Upon a Police Officer, and Unlawful Possession of Marijuana—Second Offense.[2] These charges arose from a late-night traffic stop on February 11, 2004, the related altercation between Mr. Byrd and the officer who instigated the stop, and the ensuing search of Mr. Byrd and his vehicle. Prior to this arrest, Mr. Byrd was no stranger to the law—he had previously been convicted of seven felonies with

---

[1]      As the Oklahoma Court of Criminal Appeals ("OCCA") later recognized, Mr. Byrd actually had been convicted of two prior DUI offenses—i.e., this was Mr. Byrd's *third* DUI offense. R., Vol. 1, at 336 (*Byrd v. State*, No. F-2004-1080, slip op. at 9 (Okla. Crim. App., filed Jan. 20, 2006) (unpublished)) ("This is Appellant's 3rd DUI conviction.").

[2]      In addition to these felonies, the ten-count information also charged Mr. Byrd with six misdemeanor offenses, none of which are relevant to this appeal.

sentences totaling ninety years.[3]  Consequently, the Respondent sought

enhancement of Mr. Byrd's sentence under Oklahoma's repeat-offender statute at

trial.  *See* Okla. Stat. tit. 21, § 51.1(B) ("Every person who, having been twice

convicted of felony offenses, commits a subsequent felony offense . . . within ten

(10) years of the date following the completion of the execution of the

sentence, . . . [may be] punish[ed] by imprisonment . . . for a term in the range of

twenty (20) years to life imprisonment.").

Pursuant to Oklahoma law, a criminal defendant facing a sentence

enhancement under § 51.1(B) is entitled to a bifurcated trial; in the first

stage—which focuses on the determination of guilt—a defendant's prior

convictions should not be referenced, except as permitted by the rules of

evidence.  *See* Okla. Stat. tit. 22, § 860.1.  As a result, when the arresting officer

referenced Mr. Byrd's prior convictions on direct examination during the first

stage of his initial trial, the state trial court *sua sponte* declared a mistrial.  At

Mr. Byrd's second trial, the Respondent presented its case-in-chief without

reference to the defendant's prior convictions.

---

[3]     Mr. Byrd's prior felony convictions included a DUI—Second Offense conviction in 1988 (three-year sentence); three convictions in 1989 for Unlawful Possession of a Controlled Drug with Intent to Distribute (twenty years), Unlawful Possession of Marijuana with Intent to Distribute (twenty years), and Maintaining a Dwelling where Controlled Drugs were Kept (twenty years); and three more convictions in 1993 for Unlawful Possession of a Controlled Drug (twenty years), DUI—Second Offense (five years), and Escape (two years).

In anticipation of the defense's affirmative case, an admittedly confusing colloquy took place between the trial court judge, the prosecutor, and Mr. Byrd's trial counsel, Ms. Paula Keck and Mr. Curt Allen, wherein it was discussed whether Mr. Byrd would testify at all, and, if so, how his previous convictions would be treated. The trial court determined that, should Mr. Byrd testify at this stage, he could do so *without* reference to his prior DUIs and drug-related offenses, which accounted for all but one of his previous felony convictions. Moreover, the court concluded that references to these convictions were inadmissible even for impeachment purposes as their probative value was outweighed by the potential prejudicial effect of their introduction.

The trial court did, however, indicate that Mr. Byrd could be questioned as to his other conviction—namely, his Escape conviction—and as to the total *number* of previous felony convictions he had, although the State would be barred from soliciting further information. Further, it rebuffed Mr. Byrd's suggestion that he be allowed to admit to two of his prior convictions to fulfill the requirements of § 51.1(B) without exposing himself to additional questioning about his criminal past. The trial court acknowledged that Mr. Byrd may admit to his prior convictions at the guilt phase of the proceedings, but warned that such an admission would waive the protection of the two-stage trial, thereby allowing

the prosecution to put on evidence of all his relevant prior convictions as such evidence would have been admissible during phase two of the proceedings.[4]

Faced with the apparent choice of either a single-stage trial wherein he would admit to all his prior convictions himself, or a bifurcated trial wherein the prosecution would be able to impeach him with his Escape conviction and the number of his previous felony convictions, before presenting the full array of his prior convictions and sentences at the second phase, Mr. Byrd chose to be up-front about his criminal past. Mr. Byrd admitted to each of his previous seven felony convictions on direct examination during the guilt phase of his trial, and his counsel did not object when the prosecution, on cross-examination, introduced copies of judgment-and-sentence reports for those convictions. The jury eventually found Mr. Byrd guilty on all counts, and the court sentenced him to sixty-five years in jail, plus fines.[5]

Following his conviction, Mr. Byrd appealed to the OCCA. Represented by new counsel on appeal, Mr. Byrd raised nine propositions of error, two of which

---

[4] *See Eslinger v. State*, 734 P.2d 830, 834 (Okla. Crim. App. 1987) (observing that when a "defendant confesses the former convictions under oath [during the guilt phase], the defendant is not entitled to a bifurcated trial"); *accord Ray v. State*, 788 P.2d 1384, 1386 (Okla. Crim. App. 1990) (same).

[5] The jury recommended a longer sentence—seventy-two-and-a-half years—but the trial court found that two of the ten counts merged, and reduced Mr. Byrd's sentence accordingly. On appeal to the OCCA, Mr. Byrd's sentence was further reduced due to an erroneous jury instruction, thereby yielding his current sentence of fifty-five years. *See* R., Vol. 1, at 336–37.

are relevant to the present proceedings. First, he claimed that several of his prior felony convictions arose from the same transaction or occurrence, and therefore were inadmissible for enhancement purposes. Section 51.1(B) requires that the predicate felony convictions "relied upon shall not have arisen out of the same transaction or occurrence or series of events closely related in time and location," Okla. Stat. tit. 21, § 51.1(B), and Mr. Byrd argued that his trial lawyers were ineffective in failing to investigate the "transactional" nature of some of his prior convictions. He maintained that, had his trial lawyers been effective, they would have known that several of his prior convictions would have been inadmissible even in a two-stage trial. Second, he claimed that his trial lawyers were ineffective for presenting these otherwise inadmissible prior convictions to the jury through his testimony.

Applying the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984),[6] the OCCA denied both of these claims. Regarding Mr. Byrd's

---

[6] The analysis of Mr. Byrd's claims first took place in the context of whether he satisfied the standards for an evidentiary hearing on his ineffective-assistance-of-counsel claims pursuant to Oklahoma's Rule 3.11(B)(3)(b)(i). *See* Okla. Stat. tit. 22, ch. 18, app., Rule 3.11(B)(3)(b)(i) (authorizing an evidentiary hearing for ineffective-assistance-of-counsel claims when "the application and affidavits . . . contain sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence"). Later in the opinion, however, the OCCA also stated that it rejected Mr. Byrd's claims under *Strickland*, and referenced back to its earlier discussion under Rule 3.11(B)(3)(b)(i). Although inelegantly done, it is clear that the OCCA was incorporating by reference its earlier analysis and stating that Mr. Byrd's claims

(continued...)

- 6 -

failure-to-investigate claim, the OCCA acknowledged that several exhibits submitted by Mr. Byrd in a motion to supplement "seem[ed] to support [his] allegations" that some of his prior convictions arose from the same transaction or occurrence. R., Vol. 1, at 333. Therefore, the OCCA "directed a response from the State specifically addressing whether the prior convictions [under discussion] were transactional in nature and whether they could be properly used to enhance the sentence." *Id.* at 334. In reply, the Respondent stipulated that five of Mr. Byrd's seven prior felony convictions arose from two transactions. And based on this, the OCCA determined that "only [two] of [the five] should have been used for enhancement purposes." *Id.*

Addressing the second prong of *Strickland*, the OCCA concluded that "no prejudice resulted" from "trial counsel's failure to raise this issue at trial" because "[e]ven when three of the prior convictions used for enhancement are excluded, four valid prior convictions remain[ed]," and "the sentences imposed . . . were relatively light considering Appellant was a habitual offender." *Id.* This lack of prejudice, the OCCA determined, was fatal to this claim.

The OCCA then turned to Mr. Byrd's claim that his trial counsel was ineffective for introducing his prior convictions. When addressing this issue, the OCCA concluded that his trial lawyers' decision to elicit this information

---

[6](...continued)
failed under *Strickland* for the same reasons it had identified earlier.

constituted "sound trial strategy." *Id.* at 336. In making this determination, the OCCA relied on two conclusions: first, that "the trial court ruled the State would be permitted to introduce the prior convictions and the sentences received for impeachment purposes if Appellant took the witness stand," *id.* at 335; and, second, that "as this was a one stage trial, the State was able to question Appellant [in any event] about his prior convictions which could be used to enhance his sentence should the jury find him guilty," *id.* However, the trial court actually had specifically ruled that all of Mr. Byrd's prior convictions, except for his Escape conviction, were inadmissible for impeachment purposes, and it was only his trial lawyers' decision to question Mr. Byrd about his prior convictions and sentences in the first place that made Mr. Byrd's trial a one-stage proceeding.

Relying on its faulty understanding that Mr. Byrd's convictions were otherwise admissible, the OCCA concluded that "defense counsel's decision to elicit the information concerning the priors on direct examination appears to have been calculated trial strategy to lessen the impact of the priors than if the State had been allowed to bring them to the jury's attention first." *Id.* It explained:

> [A]fter testifying to his prior criminal history, [trial counsel had] Appellant state[] that he had quit using drugs and alcohol, substances which he claimed were responsible for his prior criminal acts, and [that] he had graduated from college. Counsel's decision to have Appellant testify showed not only Appellant's willingness to admit his prior bad acts, but also showed he had changed his ways and was not continuing those

activities which previously got him in trouble. There are countless ways to provide effective assistance in any given case, and defense counsel's actions in this case can be considered sound trial strategy, and not grounds for a finding of ineffectiveness.

*Id.* at 335–36.

In the wake of the OCCA's adverse decision, on May 9, 2006, Mr. Byrd filed a pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Northern District of Oklahoma, raising, in essence, the same claims he asserted before the OCCA.[7] In April 2009, he moved to amend his petition and to add three additional claims. The district court then denied his motion and all his claims for relief, and denied him a COA. *See Byrd v. Workman*, No. 06-CV-0251-CVE-FHM, 2009 WL 3271267 (N.D. Okla. Oct. 9, 2009).

---

[7] Mr. Byrd did not seek post-conviction relief in the state courts prior to filing his federal habeas petition. Nevertheless, for the purpose of his federal habeas proceeding, his claims are exhausted because they were presented—and ruled on—by the OCCA, the highest state court in criminal matters in Oklahoma. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that to satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); 17B Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Vikram D. Amar, *Federal Practice and Procedure* § 4264 (3d ed. 2010) (observing that the exhaustion requirement is "satisfied if the federal issue has once been properly presented to the highest court of the state"); *see also Bear v. Boone*, 173 F.3d 782, 784 (10th Cir. 1999) ("Section 2254 does not . . . require repetitive presentment of a claim to the state courts.").

On application from Mr. Byrd, however, this court granted a COA on two of the issues raised—specifically, whether "his counsel was ineffective [1] in introducing his prior convictions during the guilt phase of his trial and [2] in failing to adequately prepare and investigate his claims and defenses." Order at 2, filed Mar. 25, 2010. Counsel was appointed to represent Mr. Byrd on these two claims, and a full round of supplemental briefing was submitted to this court. We now turn to the merits of Mr. Byrd's asserted errors.

## II. DISCUSSION

### A. Standard of Review

Our review of a state prisoner's petition for a writ of habeas corpus is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254. Under AEDPA, the standard of review applicable to a particular claim depends on how that claim was resolved by the state courts. *Fairchild v. Workman*, 579 F.3d 1134, 1139 (10th Cir. 2009); *Snow v. Sirmons*, 474 F.3d 693, 696 (10th Cir. 2007). Where the state court has adjudicated a claim on the merits, we may only grant relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). *Accord Selsor v. Workman*, — F.3d —, 2011 WL 1632101, at *5

(10th Cir. May 2, 2011); *Fairchild*, 579 F.3d at 1139; *Snow*, 474 F.3d at 696. In making this assessment, "[w]e review the district court's legal analysis of the state court decision *de novo*." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). We presume that the factual findings of the state court are correct unless the petitioner rebuts that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"In applying 28 U.S.C. § 2254(d), we first ask whether the principle of federal law invoked by the petitioner was clearly established by the Supreme Court at the time of the state court judgment." *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004). If so, this court then inquires "whether the state court decision was contrary to or involved an unreasonable application of that clearly established federal law." *Id.* As we have previously explained,

> [u]nder the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, relief is provided only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (alterations omitted) (citation omitted) (internal quotation marks omitted).

As the Supreme Court has recently underscored, "AEDPA imposes a 'highly deferential standard for evaluating state-court rulings,'" *Renico v. Lett*,

130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997))—one that "demands that state-court decisions be given the benefit of the doubt," *id.* (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)) (internal quotation marks omitted); *see also LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir. 1999) ("Quite simply, . . . 'AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal determinations.'" (quoting *Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997))). Accordingly, "[w]hen reviewing a state court's application of federal law, we are precluded from issuing the writ simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly." *McLuckie v. Abbott*, 337 F.3d 1193, 1197 (10th Cir. 2003). Rather, in order for this court to grant relief, "we must be convinced that the application was also objectively unreasonable." *Id.*; *accord Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007). "This standard does not require our abject deference, but nonetheless prohibits us from substituting our own judgment for that of the state court." *Snow*, 474 F.3d at 696 (citations omitted) (internal quotation marks omitted).

Our standard of review changes if there has been no state-court adjudication on the merits of the petitioner's claim. In such situations, "§ 2254(d)'s deferential standards of review do not apply." *Selsor*, 2011 WL 1632101, at *6; *see also Welch v. Workman*, — F.3d —, 2011 WL 547279, at *6

(10th Cir. Feb. 10, 2011) ("The § 2254(d) standard does not apply to issues not decided on the merits by the state court." (quoting *Bland*, 459 F.3d at 1010) (internal quotation marks omitted)).[8]  "For those claims, we review the district court's legal conclusions *de novo* and its factual findings for clear error. However, if the district court based its factual findings entirely on the state court

---

[8]     Mr. Byrd asserts that we should review the OCCA's decision de novo under the rule set forth in *Young v. Sirmons*, 551 F.3d 942, 955–56 (10th Cir. 2008).  *See* Aplt. Reply Br. at 3.  In *Sirmons*, we concluded that "we must apply de novo review in evaluating [the petitioner's] ineffective assistance claim."  551 F.3d at 955.  Although the OCCA "purported to address [the petitioner's] ineffective assistance claim on the merits," we noted that it "did so on the basis of a limited factual record" and only in the context of "whether [the petitioner] had satisfied the standard outlined in OCCA Rule 3.11(B)(3)(b)(i)," the state rule governing whether a court should grant an evidentiary hearing to further develop a defendant's ineffective-assistance-of-counsel claim.  *Id.*  Consequently, we stated that "we c[ould ]not conclude that[] the OCCA necessarily decided that the [*Strickland*] standard was not satisfied."  *Id.* at 956 (second alteration in original) (internal quotation marks omitted).

The OCCA's subsequent interpretation of Rule 3.11(B)(3)(b)(i)'s standard at least raises significant questions regarding the continuing validity of *Young*'s reasoning.  *See Simpson v. State*, 230 P.3d 888, 906 (Okla. Crim. App. 2010) ("[W]hen we review and deny a request for an evidentiary hearing on a claim of ineffective assistance under the standard set forth in Rule 3.11, we *necessarily* make the adjudication that Appellant has not shown defense counsel to be ineffective under the more rigorous federal standard set forth in *Strickland*." (emphasis added)), *cert. denied*, 130 S. Ct. 1009 (2011).  Because of Mr. Byrd's delay, however, we need not address those questions here.  Mr. Byrd raises his *Young* argument for the first time in his reply brief.  Ordinarily, this court will not consider arguments so raised.  *See, e.g.*, *United States v. Harrell*, — F.3d —, 2011 WL 1614066, at *10 (10th Cir. Apr. 29, 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived."); *United States v. Wayne*, 591 F.3d 1326, 1332 n.4 (10th Cir. 2010) (same).  We perceive no grounds for deviating from that practice in this case.

- 13 -

record, we review that record independently." *Bland*, 459 F.3d at 1010 (citation omitted).

Finally, we may not consider claims that have been "defaulted in state court on adequate and independent state procedural grounds . . . unless the petitioner can 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Matthews v. Workman*, 577 F.3d 1175, 1195 (10th Cir. 2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)), *cert. denied*, 130 S. Ct. 1900 (2010).[9]

---

[9] We pause to address an issue raised by Mr. Byrd in his supplemental opening brief. In laying out the applicable standard of review, Mr. Byrd rightly notes that a finding that a state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law does not ordinarily complete our inquiry. As Mr. Byrd explains, "[u]nless the error is a structural defect in the trial that surmounts harmless-error analysis, this court must apply the harmless-error standard enunciated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and *O'Neal v. McAninch*, 513 U.S. 432 (1995)." Aplt. Supplemental Opening Br. at 40 (citing *Turrentine*, 390 F.3d at 1189).

However, although this is generally true, applying the *Brecht/McAninch* harmless-error test is a needless formality in the context of a *Strickland* claim, which itself demands a showing that the alleged deficiency was prejudicial. Had these two tests—that is, the *Strickland* test and the *Brecht/McAninch* harmless-error test—applied different prejudice standards, it is entirely possible that a two-level inquiry would be required, as Mr. Byrd seems to suggest. We agree with our sister circuits, however, that "*Strickland* prejudice and *Brecht* harmless error are essentially the same standard," and that a second prejudice analysis under *Brecht/McAninch* is therefore unnecessary when considering ineffective-assistance-of-counsel claims. *Breakiron v. Horn*, — F.3d —, 2011 WL 1458795, at *17 n.18 (3d Cir. Apr. 18, 2011) (quoting *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007)) (internal quotation marks omitted); *see also Rodriguez v.*

(continued...)

- 14 -

**B. Ineffective Assistance of Counsel**

We review Mr. Byrd's claims of ineffective assistance of counsel under the familiar framework laid out in *Strickland*.  Under that standard, in order to prevail on a claim of ineffective assistance of counsel, Mr. Byrd must show both that his counsel's performance "fell below an objective standard of reasonableness" *and* that "the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687–88; *accord Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010).  Courts are free to address these two prongs in any order, and failure under either is dispositive.  *Strickland*, 466 U.S. at 697; *see also United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000) ("An ineffective assistance claim may be

_____

[9](...continued)
*Montgomery*, 594 F.3d 548, 551 (7th Cir. 2010) ("When a petitioner must show prejudice, as when arguing that counsel furnished ineffective assistance of counsel, it is unnecessary to show prejudice a second time through the lens of *Brecht*." (citation omitted)); *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009) ("The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review."); *Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002) ("We need not conduct a harmless error review of *Strickland* violations under *Brecht* . . . because '[t]he *Strickland* prejudice analysis is complete in itself; there is no place for an additional harmless-error review.'" (alteration in original) (quoting *Jackson v. Calderon*, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000))); *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000) (noting that *Brecht* harmless-error analysis is unnecessary when a habeas claim requires application of a "reasonable probability" standard, such as for *Strickland* claims); *Hill v. Lockhart*, 28 F.3d 832, 838 (8th Cir. 1994) (holding that analysis under the *Brecht* harmless-error test is unnecessary when petitioner is asserting a claim of ineffective assistance of counsel); *Smith v. Dixon*, 14 F.3d 956, 974, 976 (4th Cir. 1994) (en banc) (concluding that the prejudice inquiry under *Strickland* is essentially the same as the harmless-error inquiry under *Brecht*).

resolved on either performance or prejudice grounds alone." (quoting *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000)) (internal quotation marks omitted)).

We have cautioned that our review of counsel's performance under the first prong of *Strickland* is a "highly deferential" one. *Hooks*, 606 F.3d at 723. Our case law makes clear that "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994) (citing *Strickland*, 466 U.S. at 690), and that a petitioner "bears a heavy burden" when it comes to overcoming that presumption, *Fox*, 200 F.3d at 1295; *see also Fairchild*, 579 F.3d at 1140 ("We approach these issues with 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and that 'the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)). As we have explained: "To be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *Hooks*, 606 F.3d at 723 (citations omitted) (internal quotation marks omitted); *accord Gardner v. Galetka*, 568 F.3d 862, 874 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1737 (2010).

The challenge is even greater for a petitioner under § 2254, as our review in such circumstances is "doubly deferential." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). In other words, when assessing a state prisoner's ineffective-

assistance-of-counsel claims on habeas review, "[w]e defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client." *Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 3357 (2010); *see also Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (per curiam). Moreover, we recognize that, "because the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *accord Welch*, 2011 WL 547279, at *22.

As for *Strickland*'s prejudice prong, Mr. Byrd must establish "that there is a reasonable probability that, but for counsel's error, 'the result of the proceeding would have been different.'" *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 688). Put differently, Mr. Byrd must show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. A "reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial, *id.* at 694; it does not require that the petitioner show that "counsel's deficient conduct more likely than not altered the outcome in the case," *id.* at 693. However, mere speculation is not sufficient to satisfy this burden. *See United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995) ("[A]ll that the Defendant urges is speculation, not a reasonable probability that the outcome would have

- 17 -

been different.  Accordingly, he cannot establish prejudice."); *see also*

*Turrentine*, 390 F.3d at 1205 ("Mr. Turrentine must show more than that his

counsel's action had 'some conceivable effect on the outcome of the proceeding,'

because '[v]irtually every act or omission of counsel would meet that test.'"

(alteration in original) (quoting *Strickland*, 466 U.S. at 693)).

Against this backdrop, we now address Mr. Byrd's arguments on appeal.

**1.      Failure to Investigate the "Transactional" Nature of Some of Mr. Byrd's Prior Convictions**

Under Oklahoma law, regardless of whether a trial is bifurcated or not,

prior "transactional" convictions are inadmissible for sentence-enhancement

purposes.  *See* Okla. Stat. tit. 21, § 51.1(B); *accord Miller v. State*, 675 P.2d 453,

455 (Okla. Crim. App. 1984).  Such convictions *are* admissible for impeachment

purposes, but only insofar as the Oklahoma Rules of Evidence allow.  *See* Okla.

Stat. tit. 12, § 2609 (rule governing admission of prior convictions); *Gourley v.*

*State*, 777 P.2d 1345, 1348–49 (Okla. Crim. App. 1989) (stating that prior

convictions are admissible under the Oklahoma Rules of Evidence so long as the

trial court, on the record, "support[s] its decision by identifying the specific facts

and circumstances which determined the decision").  Mr. Byrd maintains that his

counsel was ineffective "in failing to investigate his prior convictions and

determine that [five] of them were transactional."  Aplt. Supplemental Opening

Br. at 43.  He reasons that competent counsel would have naturally inquired as to

whether all his prior convictions were admissible so as to avoid unnecessarily prejudicing him by allowing in "otherwise inadmissible information tending to paint him as an unrepentent recidivist who, at the time of his trial in this case, had suffered [seven] prior felony convictions for which he had received—but obviously was not serving—some ninety[] years worth of sentences."  Aplt. Reply Br. at 5.

Respondent, for its part, does not contest the fact that five of Mr. Byrd's prior convictions arose from two transactions.  Rather, it argues that the OCCA's application of *Strickland*—and particularly its finding that no prejudice resulted from this failure—was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.

Mr. Byrd does not contest that the OCCA identified the correct governing principle, i.e., *Strickland.*  Rather, he contends that the OCCA unreasonably applied that clearly established federal law.  *See Williams v. Taylor*, 529 U.S. 362, 413 (2000) (noting that relief under § 2254(d)(1) is appropriate where "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case"); *Gipson*, 376 F.3d at 1196 (same).  Giving the OCCA's decision the deference it deserves, we have little trouble concluding that the state appellate court did not unreasonably apply *Strickland* in denying this claim.  We need not decide whether the failure of Mr. Byrd's counsel to investigate the transactional

nature of his claims "fell below an objective standard of reasonableness" required by *Strickland*, 466 U.S. at 688; assuming, *arguendo*, that it did, Mr. Byrd still fails to show how the state court's prejudice determination was unreasonable. *See Strickland*, 466 U.S. at 697 (noting that ineffective-assistance-of-counsel claims may be resolved on either prong); *Kennedy*, 225 F.3d at 1197 (same).

The OCCA found that the failure of Mr. Byrd's trial lawyers to discover that some of Mr. Byrd's prior convictions were transactional was not prejudicial because "[e]ven when three of the prior convictions used for enhancement are excluded, four valid prior convictions remain[ed] with which to sentence Appellant as a habitual offender," and "the sentences imposed . . . were relatively light considering [Mr. Byrd] was a habitual offender." R., Vol. 1, at 334. By his own admission, Mr. Byrd "does not argue that his sentence would not have been enhanced had his trial counsel not performed deficiently. Rather, he argues that there is a reasonable probability that his sentence would not have been enhanced *to the extent it was*" had counsel not been ineffective in failing to identify these prior convictions as arising from the same transactions. Aplt. Reply. Br. at 4. Stated differently, Mr. Byrd believes that "the OCCA failed to consider the extent to which trial counsel's deficient investigation might have caused the otherwise inadmissible, highly prejudicial evidence to taint the jury's sentencing calculus, and that th[is] failure was an unreasonable application of federal law." *Id.* at 5.

Mr. Byrd presents us with a novel argument.  He maintains, in effect, that the OCCA unreasonably applied *Strickland*'s prejudice prong because it did not specifically reject the possibility that the jury might have recommended a lesser sentence had it not been presented with his otherwise inadmissible, transactional felony convictions.  As Mr. Byrd explains it, "[t]he OCCA's mere acknowledgment . . . that the jury did not impose the longest sentence possible hardly constitutes a finding that there is no reasonable probability the jury would have recommended a shorter sentence but for the ineffective assistance of counsel."  Aplt. Reply Br. at 7.

The novelty of this argument, however, is largely its undoing.  Mr. Byrd offers us no Supreme Court cases wherein *Strickland*'s prejudice prong was applied in this manner and this virtually forecloses the possibility of an unreasonable application of that standard.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly."  *Woodford*, 537 U.S. at 24–25; *accord House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) ("[A]n unreasonable application constitutes more than an incorrect application of federal law." (citing *Williams*, 529 U.S. at 377)).  Instead, we may grant relief only where "the state court's application of the clearly established federal law is objectively unreasonable."  *House*, 527 F.3d at 1019 (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  This places a heavy burden on the petitioner, as "AEDPA's conception

of objective unreasonableness lies 'somewhere between *clearly* erroneous and unreasonable to all reasonable jurists.'" *Id.* (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)).

Considering the wide latitude that AEDPA gives to state courts, we simply cannot conclude that the OCCA's failure to conduct the specific analysis Mr. Byrd requests renders its decision "objectively unreasonable." We fail to see how its conclusion—namely, that Mr. Byrd's relatively light sentence indicated that a further reduction was not "reasonably probable" given his uncontested status as a career offender—could be construed as being in "such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable." *Smith v. Dinwiddie*, 510 F.3d 1180, 1186 (10th Cir. 2007) (quoting *Maynard*, 468 F.3d at 669) (internal quotation marks omitted). Without any Supreme Court precedent specifically foreclosing this type of analysis, we think the state appellate court's application of *Strickland*'s prejudice prong fell well within the range of reasonableness. Accordingly, we conclude that Mr. Byrd's failure-to-investigate claim does not merit relief under § 2254(d)(1).

## 2. Introduction of All of Mr. Byrd's Prior Convictions and Sentences on Direct Examination

Mr. Byrd's remaining ineffective-assistance-of-counsel claim is straightforward: given that only four of his prior convictions were admissible for

enhancement purposes, and that the trial court had ruled those same convictions inadmissible for impeachment purposes during the first stage of the trial, Mr. Byrd believes that his trial lawyers' decision to have him "offer[] highly prejudicial and otherwise inadmissible evidence" was beyond the pale of "professionally competent assistance." Aplt. Supplemental Opening Br. at 51. The OCCA addressed this claim, rejecting it in its entirety. It expressly concluded that Mr. Byrd's trial lawyers' decision "appears to have been [a] calculated trial strategy to lessen the impact of the priors than if the State had been allowed to bring them to the jury's attention first." R., Vol. 1, at 335.

Mr. Byrd now avers that the OCCA's determination was based on an "unreasonable determination of the facts."[10] Specifically, Mr. Byrd claims that

---

[10]    At times in his supplemental opening brief, Mr. Byrd appears to conflate the two prongs of § 2254(d). For instance, Mr. Byrd first argues that

> [i]nsofar as the OCCA based its findings that defense counsel were not deficient in affirmatively introducing the prior convictions and sentences on its belief that the trial court had already found the convictions and sentences admissible for impeachment purposes, that was an unreasonable determination of the facts in light of the record.

Aplt. Supplemental Opening Br. at 48; *see id.* at 46–50. He then goes on to argue, however, that OCCA's subsequent conclusion that "defense counsel introduced the prior convictions to prove that Mr. Byrd had turned over a new leaf, and that counsel exercised 'sound trial strategy' in doing so," was "contrary to, or involved an unreasonable application of, *Strickland* and other Supreme Court cases holding that 'sound trial strategy' for criminal defense counsel does not include inculpating their clients." *Id.* at 50.

(continued...)

the OCCA's conclusion was based on the mistaken assumption that the trial court had ruled his prior convictions admissible for impeachment purposes. True to this point, the OCCA's decision does incorrectly state that "the trial court ruled the State would be permitted to introduce the prior convictions and the sentences received for impeachment purposes if [Mr. Byrd] took the witness stand." R., Vol. 1, at 335. Mr. Byrd claims that this mistake corrupts the rest of the OCCA's analysis, including its conclusion that his trial lawyers' decision to have him testify about his prior convictions represented a sound trial strategy.

It is clear that, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004). Section 2254(d)(2), however, "is a daunting standard—one that will be satisfied in relatively few cases." *Id.* at 1000. That is because an "unreasonable determination of the facts" does not, itself, necessitate relief. *See, e.g.*, *Collier v.*

---

[10](...continued)

Fortunately, the confusion that plagued Mr. Byrd's supplemental opening brief was eliminated in his reply brief, where he made clear that he is "not argu[ing] that the OCCA's decision on this issue was contrary to or an unreasonable application of *Strickland* under [§] 2254(d)(1); rather, he [is] invok[ing] 28 U.S.C. § 2254(d)(2), [and] arguing that the OCCA's finding on this issue was based upon an unreasonable determination of the facts." Aplt. Reply Br. at 12 (emphasis omitted). Consequently, we consider his arguments only as they relate to that clause.

*Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (acknowledging that "it does not necessarily follow [from the recognition that the state appellate court made a factual error] that the state court adjudication was *based on* an unreasonable determination of the facts because subsection (d)(2) instructs federal courts to evaluate the reasonableness of the state court decision 'in light of the evidence presented in the State court proceeding'" (emphasis added) (quoting 28 U.S.C. § 2254(d)(2))); *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) ("[U]nder § 2254(d)(2), a federal court may . . . grant a writ of habeas corpus if a *material* factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" (emphasis added) (quoting 28 U.S.C. § 2254(d)(2))); Brian R. Means, *Federal Habeas Manual* § 3:96 (2010) (noting that some courts have recognized that "just because the petitioner overcomes the presumption of correctness . . . as to certain facts does not necessarily mean that the state court's ultimate factual determination under § 2254(d)(2) based on other facts was unreasonable"). Rather, in order to receive relief under this clause, the petitioner must show that the state court's adjudication of the claim "resulted in a decision that was *based on* an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2) (emphasis added).

Mr. Byrd's claim under § 2254(d)(2) ultimately fails because he cannot show that the "decision"—i.e., the overall *Strickland* determination of the

- 25 -

court—was "based on"—i.e., "rests upon," *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)—an unreasonable determination of the facts. Mr. Byrd contends that the OCCA "did not reach the issue of prejudice" regarding his lawyers' eliciting of testimony pertaining to the convictions. Aplt. Supplemental Opening Br. at 38. Even if we assume that the OCCA's prejudice ruling concerning the failure-to-investigate claim cannot be read to extend to this claim, such that its denial of Mr. Byrd's claim arguably relied on an unreasonable determination of certain facts (e.g., regarding whether the trial court allowed into evidence the prior convictions for impeachment purposes), that would not end our inquiry. We review the "OCCA's *decision* and not its reasoning." *Jackson v. Ray*, 390 F.3d 1254, 1266 (10th Cir. 2004) (emphasis added); *see also Saiz v. Ortiz*, 392 F.3d 1166, 1176 (10th Cir. 2004) ("[W]e focus on the *result* of the state court decision, not its reasoning." (emphasis added)). Therefore, we would still be left to review Mr. Byrd's *Strickland* claim de novo. *See, e.g.*, *Bunton v. Atherton*, 613 F.3d 973, 982 (10th Cir. 2010) ("[A]ssum[ing] . . . that the [state court] unreasonably applied *Strickland* in determining that Johnson made a reasonable strategic decision to forego Bursie's testimony, we would still be left to determine, de novo, whether [the *Strickland* standard was satisfied]."), *cert. denied*, 131 S. Ct.

- 26 -

1783 (2011).[11] And, even under this more generous de novo standard, Mr. Byrd's claim still fails.

Mr. Byrd offers little more than speculation regarding the purported prejudicial effect of the admission of these additional felonies on his sentence, and it is well-established that such speculation alone cannot give rise to a "reasonable probability" that the outcome of the trial would have been different. *See, e.g.*, *Hale v. Gibson*, 227 F.3d 1298, 1325 (10th Cir. 2000) ("Mere speculation that the jury might have returned a lesser prison sentence . . . is not sufficient to show prejudice."); *Boone*, 62 F.3d at 327 ("[A]ll that the Defendant urges is speculation, . . . [and] [a]ccordingly, he cannot establish prejudice."). Nevertheless, Mr. Byrd suggests that we should find a reasonable probability of prejudice based on the rationale laid out in our nonprecedential decision *Wood v. Hargett*, 16 F. App'x 886 (10th Cir. 2001).

In *Wood*, a panel of this court was called upon to consider whether a petitioner was entitled to a COA based on his claims of ineffective assistance of counsel. As in this case, the petitioner in *Wood* had received a sentencing enhancement under § 51.1(B), and, like Mr. Byrd, several of his previous convictions had arisen from a single prior transaction or occurrence. The

---

[11] Mr. Byrd explicitly acknowledges that such a de novo inquiry would be appropriate if the district court did not address the merits of the prejudice question. *See* Aplt. Supplemental Opening Br. at 38 ("On *de novo* review, this Court should determine that Mr. Byrd did indeed suffer prejudice.").

petitioner's lawyer had not objected when all of his client's previous felonies were submitted to the court. As a result, the petitioner sought a writ of habeas corpus on the grounds that "his trial counsel was ineffective for failing to challenge the use of the related convictions for enhancement purposes." *Id.* at 888–89.

After concluding that it "[could not] think of any tactical reason why petitioner's trial counsel would not have investigated this matter," *id.* at 890, the panel turned to the issue of prejudice:

> Respondent argues, without citing any authority, that even assuming that these three convictions should be counted as only one, petitioner cannot show prejudice because he still would have three valid prior convictions to support his enhanced sentence. Under Oklahoma law, however, sentencing decisions are left to the jury's discretion, and the number of prior convictions presented to the jury may well affect the jury's discretion. . . .

> "A deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's favor can constitute ineffective assistance of counsel." *United States v. Castro*, 26 F.3d 557, 560 (5th Cir. 1994) (quoted in *United States v. Harfst*, 168 F.3d 398, 404 (10th Cir. 1999)). Petitioner has presented evidence that his counsel was ineffective for failing to challenge prior convictions used to enhance his sentence. We thus conclude that, assuming the facts are as petitioner contends and the Missouri convictions should have been counted as only one, petitioner has demonstrated a reasonable probability that but for counsel's error, the result of the sentencing proceeding would have been different.

*Id.* at 890–91 (footnote omitted).

Mr. Byrd contends that "[t]he facts of *Wood* are remarkably similar to those here," and therefore urges us to conclude that he has shown a reasonable probability of prejudice. Aplt. Reply Br. at 30. We are, of course, not bound by this nonprecedential opinion, but we find it easily distinguishable in any event. In *Wood*, the "prosecutor emphasized and, in fact, solely relied on the number of prior convictions in seeking a harsh sentence for petitioner," 16 F. App'x at 890, whereas here, by Mr. Byrd's own admission, the prosecutor "did not expressly base his argument for lengthy jail time on the number of Mr. Byrd's prior convictions," Aplt. Supplemental Opening Br. at 55. Instead of advocating for a particular sentence, as the prosecutor did in *Wood*, the prosecutor in Mr. Byrd's case simply asked the jury to give the defendant a sentence which would "send a message . . . that his actions . . . are not tolerated in Tulsa County." Supplemental R., Vol. 1, at 756. We think this to be an important distinction.[12]

In situations like the one presented in *Wood*, the probability that the sentence would be affected by the inclusion of the otherwise inadmissible convictions is seemingly quite high. Not only does the "prosecutor's opinion carr[y] with it the imprimatur of the Government," *United States v. Young*, 470

---

[12] The other case Mr. Byrd relies on is *Miller v. State*. In *Miller*, the OCCA found prejudice in a comparable situation where "[t]he prosecutor based his argument for a long prison term solely on the number of prior convictions." 675 P.2d at 455. Perhaps unsurprisingly, this court relied heavily on *Miller* when deciding *Wood*. Given the important factual distinction noted above, however, *Miller* (like *Wood*) is distinguishable.

U.S. 1, 18 (1985), but her "experience in criminal trials may induce the jury to accord unwarranted weight to [her opinions]," *Cargle v. Mullin*, 317 F.3d 1196, 1218 (10th Cir. 2003) (quoting *United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir. 1976)) (internal quotation marks omitted). Thus, it would be perfectly rational to conclude in such situations—i.e., when a prosecutor makes a specific sentencing recommendation to the jury and justifies it based solely on the *number* of prior felony convictions—that a reasonable probability of prejudice has been shown. However, we are not persuaded that this reasoning extends to cover this scenario, where such factors are not present. In this situation, we would be hard-pressed to conclude that the jury was "deprived of [its] opportunity to exercise its discretion in [Mr. Byrd's] favor." *Castro*, 26 F.3d at 562.

All that Mr. Byrd is left with in the end is the bald assertion that had the jury not known about some of his prior convictions, it would have given him a lighter sentence. But this is simply not enough to satisfy the demands of *Strickland*. We believe that Mr. Byrd's argument that the jury might have imposed a lesser sentence had his counsel not introduced evidence "suggesting that he was an unrepentent recidivist," Aplt. Reply Br. at 10, is particularly hollow given that the disagreement here is over whether seven prior felony convictions should have been admitted or *just* four. In either case, Mr. Byrd—at least in the eyes of most of the world—*is* an unrepentent recidivist. We see nothing in the record to indicate that the jury would parse things as finely as

- 30 -

Mr. Byrd suggests. Accordingly, even under de novo review, we would find that Mr. Byrd has shown no prejudice from his trial lawyers' alleged ineffectiveness in introducing his otherwise inadmissible prior, transactional felony convictions on direct examination. Therefore, Mr. Byrd has failed to satisfy the requirements of *Strickland*.

## III. CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's denial of Mr. Byrd's habeas petition.