FILED
United States Court of Appeals
Tenth Circuit

July 7, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BILLY GENE MARSHALL,

Petitioner-Appellant,

v.

JAMES RUDEK, Warden,

Respondent-Appellee.

No. 13-5116
(D.C. No. 4:10-CV-00436-GKF-TLW)
(N.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

Billy Gene Marshall is an Oklahoma state prisoner serving consecutive life sentences for first-degree murder and first-degree robbery. Proceeding pro se, he now seeks a certificate of appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2254 habeas petition. We deny a COA and dismiss the appeal.

**BACKGROUND**

On June 14, 2006, police found seventy-one year old Alonzo Tibbs, Jr. beaten to death in his bedroom. He had suffered twelve blows to the head from a blunt instrument, "consistent with being attacked with a hammer." *Marshall v. State*,

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

232 P.3d 467, 472 (Okla. Crim. App. 2010). There was a large amount of blood spattered throughout the room, and Mr. Tibbs' wallet was missing.

On the day of the murder, an arrest warrant had been issued for Mr. Marshall for robbing a local store and attacking the store clerk with a hammer. Based on the similarities between the attacks on the store clerk and Mr. Tibbs, police arrested Mr. Marshall the next day for Mr. Tibbs' murder.

Mr. Marshall's girlfriend spoke to police. She told them that she and Mr. Marshall used to live near Mr. Tibbs and that Mr. Marshall had borrowed money from him. She also said that on the day of the murder, Mr. Marshall left their home dressed in a t-shirt and jeans and he returned wearing shorts and a different shirt.

Continuing their investigation, police searched a home that Mr. Marshall and his girlfriend had been evicted from a month before the murder. Inside, they found bloody clothes wrapped in a sheet and placed in a trash can. One of the articles of bloody clothing was a pair of jeans, and in a pocket was Mr. Tibbs' wallet. Mr. Marshall's girlfriend identified the jeans as "just like" jeans Mr. Marshall had bought from Walmart. R., Vol. II at 1299. Police also found a small hammer in a bedroom closet.

When questioned by police, Mr. Marshall said he went by Mr. Tibbs' home the morning before the murder, saw Mr. Tibbs washing his car, and then met a relative for a morning of gutter cleaning. But according to the relative, he met with

Mr. Marshall for only about twenty minutes, and Mr. Marshall did not clean any gutters.

At trial on charges of first-degree murder and first-degree robbery, the Tulsa forensic laboratory's DNA manager, Dr. Valerie Fuller, who had run DNA tests on the bloody clothing, was unavailable to testify. Consequently, a forensic DNA examiner who had reviewed Dr. Fuller's work recounted her findings. Specifically, the examiner testified that DNA from the blood on Mr. Marshall's jeans matched Mr. Tibbs and Mr. Marshall.

Mr. Marshall did not testify. The jury returned a guilty verdict, and he was sentenced to two consecutive life-imprisonment terms. The Oklahoma Court of Criminal Appeals (OCCA) found that the trial court erred by allowing the substitute DNA testimony, but it found the error harmless and it affirmed Mr. Marshall's convictions and sentences.

In his district court habeas petition, Mr. Marshall argued that (1) admission of the substitute DNA evidence was harmful constitutional error; (2) admission of prior-crimes evidence deprived him of a fair trial; and (3) trial counsel was ineffective. The district court denied the petition and declined to issue a COA.

## DISCUSSION

### I. Standards of Review

A COA is available only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a showing

"that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006) (internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act (AEDPA) further constrains our review. Under AEDPA,

> when a state court has reviewed a claim on its merits, federal habeas relief may be granted only if the state court's decision (1) was contrary to or involved an unreasonable application of clearly established Federal law, or (2) was based upon an unreasonable determination of the facts in light of the evidence presented at trial.

*Howell v. Trammell*, 728 F.3d 1202, 1212 (10th Cir. 2013) (internal quotation marks omitted). But "[w]hen the state courts have not addressed the merits of a specific constitutional claim, . . . there is no adjudication of that claim and hence we review the federal district court's legal determinations *de novo* and its factual findings for clear error." *Le v. Mullin*, 311 F.3d 1002, 1010 (10th Cir. 2002) (per curiam).

Finally, "[w]hile we liberally construe [Mr. Marshall's] pro se filings, we will not assume the role of advocate." *United States v. Parker*, 720 F.3d 781, 784 n.1 (10th Cir. 2013) (internal quotation marks omitted).

## II. Confrontation Clause

The Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The OCCA held that Mr. Marshall's "rights under the Confrontation Clause were violated as he was

- 4 -

denied the opportunity to confront and cross-examine Dr. Fuller in order to test her competence and the accuracy of her [DNA] findings." *Marshall*, 232 P.3d at 475. But the OCCA found the error harmless, because even without the DNA evidence, there was overwhelming evidence of Mr. Marshall's guilt.

The district court agreed that Mr. Marshall's confrontation rights were violated. It then examined the evidence and concluded that the erroneous admission of the DNA evidence did not have a substantial and injurious effect on the jury's verdicts.[1]

Mr. Marshall argues that the district court applied the wrong harmlessness standard of review. He contends that the proper standard requires the reviewing court to determine "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967).

While *Chapman* applies "[i]n a *direct* review of a state court criminal judgment, . . . the more forgiving standard first articulated in *Brecht v. Abrahamson*," applies "in a collateral review of a state court's criminal judgment." *Lockett v. Trammel*, 711 F.3d 1218, 1232 (10th Cir. 2013) (internal quotation marks omitted). In reviewing Mr. Marshall's collateral attack on his state court criminal convictions, the district court applied *Brecht*, which deems an error "harmless unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Id.*

---

[1] We assume, without deciding, that Mr. Marshall's confrontation right were violated by the substitute DNA testimony.

"[A] substantial and injurious effect exists when the court finds itself in grave doubt about the effect of the error on the jury's verdict." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (internal quotation marks omitted).

Mr. Marshall fails to identify any aspect of the district court's *Brecht* analysis that is debatable. As the district court observed, admission of the prohibited DNA evidence could have had little effect on either the murder or robbery conviction given the overwhelming non-DNA evidence of his guilt. Indeed, among other things, police found Mr. Tibbs' wallet in bloodied jeans that were "just like" a pair owned by Mr. Marshall and they were found inside a home that Mr. Marshall had recently occupied. R., Vol. II at 1299. Further, Mr. Tibbs was bludgeoned to death with a hammer-like instrument, and Mr. Marshall had been identified as the hammer-wielding assailant in a prior crime. We have no grave doubt that admission of the DNA evidence was harmless.

### III. Evidence of Prior Robbery & Assault

Under Oklahoma law, "evidence of other crimes is admissible where it tends to establish absence of mistake or accident, common scheme or plan, motive, opportunity, intent, preparation, knowledge and identity." *Lott v. State*, 98 P.3d 318, 334 (Okla. Crim. App. 2004). The OCCA determined that Mr. Marshall's robbery and assault on the store clerk with a hammer was "probative of the identity of Mr. Tibbs['] assailant as it tended to prove that it was [Mr. Marshall] who beat Mr. Tibbs to death with a hammer." *Marshall*, 232 P.3d at 477.

- 6 -

Habeas relief is available to "disturb a state court's admission of evidence of prior crimes, wrongs or acts" only if "the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law." *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (internal quotation marks omitted). The district court concluded that the OCCA's rejection of Mr. Marshall's claim was not unreasonable.

Mr. Marshall has failed to show how the district court's decision is debatable. He maintains that the store clerk's identification was unreliable because her description of the attacker did not entirely match him. But she picked him out of a photographic line-up and she identified him during the trial in that case as her attacker. There was strong probative value in the evidence that Mr. Marshall had used a hammer in a robbery and assault committed only two weeks before and five miles from the robbery and murder of Mr. Tibbs. Further, the trial court instructed the jury that the evidence "was not to be considered as proof of guilt or innocence of the charged offense." *Marshall*, 232 P.3d at 477. We conclude that the prejudicial effect of the other-crimes evidence did not so greatly outweigh its probative value as to deny Mr. Tibbs "the fundamental fairness that is the essence of due process." *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002).

## IV. Ineffective Assistance of Counsel

Under *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), an ineffective-assistance-of-counsel claim requires deficient performance and resulting prejudice. "[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, we defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (brackets and internal quotation marks omitted).

### A. Search-Warrant Affidavit

Mr. Marshall first contends that trial counsel was ineffective by not cross-examining the detective who submitted an affidavit in support of a search warrant for Mr. Marshall's car. In preparing the affidavit, the detective reported that the girlfriend had said the pants Mr. Marshall wore on the day of the murder "were crumpled up in the backseat of his [car]." R., Vol. I at 195. Mr. Marshall claimed on direct appeal that defense counsel should have established through cross-examination that he "certainly did not wear the pants" found in the trash can of his former home because they were in the car. *Id.* at 196.

The OCCA failed to address Mr. Marshall's argument. The district court reviewed the trial testimony and noted that defense counsel had cross-examined Mr. Marshall's girlfriend about whether she had told detectives that the jeans Mr. Marshall wore on the day of the murder were in his car. The girlfriend answered

"[n]o," and defense counsel moved on with her cross-examination. R., Vol. II at 1330. Thus, the district court concluded that Mr. Marshall did not receive ineffective assistance, as defense counsel had attempted to expose the inconsistency about where Mr. Marshall's pants from the day of the murder ended up.

Because the OCCA did not address Mr. Marshall's claim, the OCCA's decision is not entitled to AEDPA deference. *See Le*, 311 F.3d at 1010-11 ("When the state courts have not addressed the merits of a specific constitutional claim, . . . we review the federal district court's legal determinations de novo and its factual findings for clear error."). Nevertheless, the district court's rejection of the claim is not debatable.

Specifically, defense counsel did not perform deficiently because she in fact attempted to establish that Mr. Marshall's pants worn on the day of the murder were in his car, rather than the trash can. And Mr. Marshall has failed to explain how defense counsel counsel acted unreasonably by choosing to pursue that theory on cross-examination with his girlfriend—who purportedly made the statement—rather than the detective. "To be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *Byrd*, 645 F.3d at 1168 (internal quotation marks omitted).

Moreover, Mr. Marshall has not adequately explained how the presence of a pair of his jeans in the car necessarily negates the presence of a pair of his jeans in

the trash. The testimony at trial showed that he had three pairs of jeans, two of which were like the jeans he was wearing when he left home several hours before Mr. Tibbs' murder. *See* R., Vol. II at 1301, 1306. Thus, Mr. Marshall has also failed to show prejudice from defense counsel's performance.

## B. False Testimony

Mr. Marshall next argues that defense counsel was ineffective because she did not object to purportedly false testimony from (1) his girlfriend that the water at their former home was turned off; and (2) Mr. Tibbs' neighbor that the neighbor heard a dog barking shortly after noon on the day of the murder. Mr. Marshall also argues that defense counsel should have objected to the lack of any pretrial discovery concerning the neighbor's testimony. The OCCA rejected all aspects of Mr. Marshall's arguments because he failed to show how any of the testimony was false or that there had been any discovery violation.

The district court determined that Mr. Marshall had failed to show how the OCCA unreasonably applied *Strickland* in rejecting his arguments. We agree with the district court. Mr. Marshall offers nothing to support his arguments that there was any false testimony or a discovery violation; nor does he coherently address how the testimony or lack of discovery actually prejudiced his defense.

## C. Failure to Object to Evidence Found at the Former Home

Finally, Mr. Marshall asserts that defense counsel was ineffective because she failed to object at trial to the evidence seized from his former home. The OCCA rejected the assertion, observing that defense counsel had moved before trial to suppress the evidence, albeit unsuccessfully, and that the search of the home was lawful. Consequently, the OCCA held that counsel was not "ineffective for failing to raise a second objection to the admission of the seized evidence." *Marshall*, 232 P.3d at 482.

The district court determined that, because habeas review of any search-and-seizure issue was precluded by *Stone v. Powell*, 428 U.S. 465, 481-82 (1976), Mr. Marshall could not show prejudice from defense counsel's failure to object at trial. Thus, the district court concluded that Mr. Marshall had not demonstrated that the OCCA unreasonably applied *Strickland*.

But the Supreme Court in *Kimmelman v. Morrison* held that *Stone* does not block consideration of the search-and-seizure component of an ineffective-assistance claim. *See* 477 U.S. 365, 382-83 (1986) ("[W]e reject petitioners' argument that *Stone*'s restriction on federal habeas review of Fourth Amendment claims should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue."). Nevertheless, to prevail on such a hybrid Sixth and Fourth Amendment claim, Mr. Marshall must show that defense counsel performed

deficiently by not renewing an objection to the evidence and that he suffered prejudice, which requires a "show[ing] both that his Fourth Amendment claim challenging the arrest warrant is meritorious and that a reasonable probability exists that the verdict would have been different absent the excludable evidence." *Hooper v. Mullin*, 314 F.3d 1162, 1175 (10th Cir. 2002).

Mr. Marshall has not satisfied these requirements. As the OCCA held, Mr. Marshall lacked standing to contest the search, and the information in the search-warrant affidavit "was more than sufficient to support the search." *Marshall*, 232 P.3d at 479. Mr. Marshall seems to suggest that these holdings are unreasonable because he was on the lease agreement to his former home and because detectives may have searched the home before obtaining a warrant "to look for potential dangerous person(s)." Aplt. Br. at 35. But it is well established that an eviction terminates any reasonable expectation of privacy in a dwelling, and thus, a former occupant lacks standing to assert a Fourth Amendment challenge. *See United States v. Curlin*, 638 F.3d 562, 565-66 (7th Cir. 2011) (collecting cases). And even if detectives had searched the home before obtaining the warrant,[2] Mr. Marshall fails to indicate that any information from that search went into the affidavit, or if it did, that

---

[2]     Mr. Marshall provides few facts to establish that a prior search occurred. Nor does he address whether the warrantless search was justified by exigent circumstances. *See United States v. Porter*, 594 F.3d 1251, 1255 (10th Cir. 2010) ("An exception to the warrant requirement exists . . . when the exigencies in a situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (brackets, ellipsis, and internal quotation marks omitted)).

the information was critical to establishing probable cause for the search. *See United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005) ("An affidavit containing erroneous or unconstitutionally obtained information invalidates a warrant if that information was critical to establishing probable cause. If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid." (internal quotation marks omitted)). Thus, Mr. Marshall has not demonstrated that he is entitled to a COA on this ground of ineffective assistance.[3]

### CONCLUSION

We deny a COA and dismiss this appeal.

Entered for the Court


Wade Brorby
Senior Circuit Judge

---

[3] Mr. Marshall also argued to the OCCA that counsel should have objected to the DNA extracted from inside his mouth because he was not given warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and because the warrant that authorized the extraction contained falsehoods. The OCCA rejected the argument, noting that Mr. Marshall had provided "only conclusory allegations" challenging the warrant's validity and that a valid warrant obviated the need for *Miranda* warnings. *Marshall*, 232 P.3d at 482. Thus, the OCCA concluded that defense counsel could not have been ineffective by failing to raise a meritless objection. The district court found that the OCCA reasonably applied *Strickland*.

It is unclear if Mr. Marshall is seeking a COA on this ground of ineffective assistance. To the extent the ground is omitted from his lengthy and convoluted application for a COA, the ground is waived. *See United States v. Yelloweagle*, 643 F.3d 1275, 1280 (10th Cir. 2011). Otherwise, Mr. Marshall has failed to show that a COA is warranted.