**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 22, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SAMUEL M. BECKER,

     Petitioner - Appellant,

v.

SAM CLINE, Warden; ATTORNEY
GENERAL OF KANSAS,

     Respondents - Appellees.

No. 16-3262
(D.C. No. 5:15-CV-03036-JTM)
(D. Kan.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **TYMKOVICH**, Chief Judge, **McKAY** and **LUCERO**, Circuit Judges.
_____

Samuel Becker, a state prisoner, requests a certificate of appealability

("COA") to appeal the district court's denial of his 28 U.S.C. § 2254 petition. We

deny a COA and dismiss the appeal.

**I**

A jury found Becker guilty of first degree felony murder, aggravated burglary,

two counts of aggravated assault, two counts of aggravated battery, four counts of

kidnapping, and attempted kidnapping. A recitation of the underlying facts can be

found in the decision affirming Becker's convictions. See State v. Becker, 235 P.3d

_____

[*] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

424, 427-29 (Kan. 2010) ("Becker I"). After being sentenced to a life term in prison plus 68 months, Becker unsuccessfully sought state post-conviction relief, alleging ineffective assistance of counsel. See Becker v. State, No. 108,776, 2014 WL 1707435, at *9 (Kan. Ct. App. Apr. 25, 2014) (per curiam) (unpublished table decision) ("Becker II"). He subsequently filed a § 2254 petition in the district court. The court denied the petition and declined to issue a COA. Becker now seeks a COA from this court.

## II

A petitioner may not appeal a district court order denying federal habeas relief without a COA. § 2253(c)(1). We will grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To meet this standard, Becker "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because Becker's claims were adjudicated on the merits in state court, habeas relief is appropriate only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts." § 2254(d).

## A

Becker argues that his trial counsel rendered ineffective assistance by: (1) failing to prepare Becker to testify, inadequately advising him of his right to testify, failing to recommend that he testify, and denying him the right to testify;

2

(2) failing to investigate and pursue a defense that Becker did not have the requisite mental state to commit the charged crimes; and (3) failing to investigate and pursue a defense based on proximate cause.

To prevail on his ineffective assistance claims, Becker must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). "To be deficient, [counsel's] performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) (quotation omitted). On federal habeas review, our application of the Strickland standard becomes "doubly" deferential: "[T]he question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotation omitted).

**1**

Becker first contends that counsel provided inadequate representation by effectively denying him the right to testify at trial. Becker and his attorney initially agreed that Becker would not take the stand. Three days before the trial's start date, however, the prosecution informed defense counsel that one of its witnesses was now claiming Becker had confessed to shooting the felony-murder victim. See Becker II,

3

2014 WL 1707435, at *4.[1]  Becker suggests that this new evidence gave rise to a possible self-defense claim, which only his testimony could have supported. Nevertheless, defense counsel persisted in his recommendation that Becker not testify and failed to prepare Becker to take the stand in his own defense.

As the KCOA noted, however, Becker admitted at the state post-conviction hearing that trial counsel "informed him of his right to testify." Becker II, 2014 WL 1707435, at *4.  Becker also "repeatedly acknowledged that he knew it was his right to testify" and admitted that "it [had been] his choice not to." Id.  These facts, together with Becker's concession that he relied on his attorney's advice in deciding not to testify, support the conclusion that he understood the ultimate decision was his own.

Becker's assertion that his attorney's advice not to testify was strategically flawed is also unavailing.  An attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.  Although Becker argues that his testimony was necessary to support a self-defense theory, the KCOA determined that his refusal to waive his speedy trial rights prevented his attorney

---

[1] A state court's determination of the facts is presumed to be correct unless rebutted by clear and convincing evidence.  § 2254(e)(1).  Because Becker has failed to put forth such evidence, we rely, throughout this order, on facts recited in the decision of the Kansas Court of Appeals ("KCOA") affirming the denial of state post-conviction relief.

from investigating and pursuing that defense.  Becker II, 2014 WL 1707435, at *4-5, *9.  Accordingly, there is a reasonable argument that counsel's performance was not deficient.  See Harrington, 562 U.S. at 105.

**2**

Becker also claims that his attorney was ineffective for failing to investigate and pursue a defense that he did not have the requisite mental state to commit the crimes charged.  Specifically, Becker contends that counsel should have conducted further research into the effects of post-traumatic stress disorder ("PTSD"), with which Becker was diagnosed approximately four years prior to the events underlying his convictions.  See Becker II, 2014 WL 1707435, at *7.  Becker's attorney received a report about the diagnosis before trial but did not request an independent evaluation or discuss with Becker the possibility of pursuing a defense based on his mental health.  See id.

As noted above, we are reluctant to second-guess strategic decisions made after an attorney's reasonable investigation of the law and facts.  See Strickland, 466 U.S. at 690-91.  In this case, "[t]he evidence at the [post-conviction evidentiary hearing] was undisputed" that Becker was not amenable to presenting his mental state as a defense.  Becker II, 2014 WL 1707435, at *7.  Moreover, counsel testified that nothing in his interactions with Becker indicated that his client was experiencing symptoms of PTSD or was unable to distinguish right from wrong, such that his mental health would constitute a viable defense.  See id.  The KCOA determined that counsel's decision not to pursue a PTSD defense was a strategic one, arrived at after

5

sufficient investigation.  Id.  In light of the evidence presented, we conclude that the KCOA's determination was not unreasonable.

**3**

In his final ineffective assistance claim, Becker contends that his attorney was deficient for failing to pursue a defense based on proximate causation.  According to Becker, a lack of timely medical intervention—and not the shooting—was the immediate cause of the victim's death.  But counsel testified that he declined to pursue this defense only after speaking with the coroner and conducting independent legal research.  Id. at *6; see also Strickland, 466 U.S. at 690-91 (requiring deference to an attorney's strategic decisions made after investigation of the law and facts).  Although Becker continues to assert that a proximate cause defense was "plausible," he does not present any authority to support this argument.  He has therefore failed to demonstrate entitlement to relief on this claim.

**B**

In addition to asserting that his counsel was ineffective, Becker contends that the trial court violated his due process rights by failing to give a specific unanimity instruction and appropriate verdict form to the jury.  Alternatively, he argues there was insufficient evidence that the killing occurred during the commission of the kidnappings or attempted kidnapping.

Becker's felony-murder charge was based on three different underlying felonies (the kidnappings of three different individuals).[2] Becker did not request a unanimity instruction, and neither the felony-murder instruction nor the verdict form required the jury to specify which offense or offenses constituted the predicate felony for his murder conviction.

On direct appeal, the Kansas Supreme Court ("KSC") concluded that the trial court did not err in failing to give a specific unanimity instruction because the three underlying felonies constituted alternative means of committing the single offense of felony murder. Becker I, 235 P.3d at 434. According to the KSC, the jury did not have to agree "as to the particular means by which the crime was committed, so long as substantial evidence support[ed] each alternative means." Id. The district court concluded that the KSC's rejection of Becker's unanimity argument was consistent with the Supreme Court's decision in Schad v. Arizona, 501 U.S. 624 (1991). There, the Court upheld a first degree murder conviction under jury instructions that did not require the jury to agree on the particular theory or means—premeditated murder or felony murder—of committing the offense charged. Id. at 645. Although Becker asserts that the three kidnappings in this case constitute "multiple acts" rather than alternative means of committing the single offense of felony murder, he has not shown that reasonable jurists could debate whether the KSC's opposite determination was contrary to or an unreasonable application of federal law.

---

[2] The jury ultimately convicted Becker of kidnapping with respect to the first two victims and attempted kidnapping with respect to the felony-murder victim.

7

Becker argues that even if this is an "alternative means" case, there was insufficient evidence that the predicate kidnappings/attempted kidnapping were ongoing at the time of the murder.[3] But the KSC rejected this argument, finding that "[t]he kidnappings and the murder were closely related" and that the attempted kidnapping was ongoing when the murder occurred. Id. at 435. It further reasoned that the felony-murder instruction required the jury to determine whether the killing occurred "while in the commission of" the underlying offenses, and that nothing in the record indicated that the jury disregarded this directive. Id.; see also United States v. Chanthadara, 230 F.3d 1237, 1251 (10th Cir. 2000) ("Generally, we assume that jurors follow the judge's instructions."). Again, Becker has not shown that jurists could debate the reasonableness of the KSC's determination.

## III

For the foregoing reasons, we **DENY** Becker's application for a COA and **DISMISS** the appeal. We decline to revisit this court's prior order provisionally

---

[3] Becker also appears to challenge the sufficiency of the evidence supporting the predicate kidnapping convictions. The KSC affirmed these convictions on direct appeal, holding that there was "ample evidence . . . showing that Becker acted as both a principle and as an aider and abettor of the various kidnappings of which he was convicted." Becker I, 235 P.3d at 432. Becker has not shown that this determination was unreasonable.

granting Becker's unopposed motion to file Volume X of the Appellant's Appendix under seal.

Entered for the Court


Carlos F. Lucero
Circuit Judge