FILED
United States Court of Appeals
Tenth Circuit

January 31, 2023

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARLON ALONZO SMITH,

Defendant - Appellant.

No. 21-4130
(D.C. Nos. 2:21-CV-00081-DN &
2:16-CR-00020-DN-1)
(D. Utah)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HOLMES**, Chief Judge, **KELLY**, and **McHUGH**, Circuit Judges.
_____

Defendant-Appellant Marlon A. Smith, a federal prisoner proceeding pro se,[1]

seeks a certificate of appealability ("COA") and permission to proceed *in forma pauperis*

("IFP") to challenge the district court's dismissal of his 28 U.S.C. § 2255 petition.

Exercising jurisdiction under 28 U.S.C. § 1291, we **DENY** Mr. Smith's request for a

COA, **DENY** his application to proceed IFP, and **DISMISS** this matter.

_____

[*]    This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    Because Mr. Smith litigates this matter pro se, we construe his filings liberally but do not act as his advocate.  *See United States v. Parker*, 720 F.3d 781, 784 n.1 (10th Cir. 2013) (citing *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008)).

# I

On January 1, 2016, Utah Highway Patrol Trooper Jared Withers stopped Mr. Smith for speeding. Trooper Withers approached Mr. Smith and, based on their interactions, grew suspicious that Mr. Smith was engaged in criminal activity. As such, while waiting on the results of a criminal-history check from dispatch, Trooper Withers screened Mr. Smith's vehicle with his narcotics detection dog, which alerted Trooper Withers to the rear of Mr. Smith's vehicle. Trooper Withers ordered Mr. Smith out of the vehicle, but Mr. Smith refused and sped away. A high-speed chase ensued, and eventually Mr. Smith surrendered. A subsequent search of the trunk of Mr. Smith's vehicle yielded approximately 2kg of marijuana and 1.76kg of methamphetamine. A grand jury thereafter returned an indictment charging Mr. Smith with possession of "500 grams or more of a mixture and substance containing a detectable amount of methamphetamine . . . ." R. at 289 (Mem. Decision and Order Den. Mr. Smith's Am. 28 U.S.C. § 2255 Mot., filed Aug. 13, 2021) (omission in original) (emphasis omitted); *see also* Aplt.'s Appl. to Grant COA at 4.

On May 13, 2016, through counsel R. Blake Hamilton, Mr. Smith filed a motion to suppress in which he challenged the length of the traffic stop and the eventual vehicle search under the Fourth Amendment. On September 12, 2016, the district court denied Mr. Smith's motion to suppress.

On April 12, 2017, Bel-Ami de Montreux filed notice that he had been retained by Mr. Smith. Now represented by Mr. de Montreux, Mr. Smith's jury trial began on June 11, 2018. On June 13, 2018, Mr. Smith was convicted of possession with intent to

distribute, and was sentenced to 180 months' imprisonment and 5 years of supervised relief.

Mr. Smith, still represented by Mr. de Montreux, appealed and challenged (1) the sufficiency of the evidence presented at trial, and (2) the admission of expert testimony of Drug Enforcement Administration ("DEA") Special Agent Susan Thomas. *See United States v. Smith*, 800 F. App'x 658, 659 (10th Cir. 2020) (unpublished). We affirmed Mr. Smith's conviction. *See id.*

On February 8, 2021, Mr. Smith filed a § 2255 petition. On May 3, 2021, Mr. Smith filed an amended § 2255 petition, in which he voluntarily dismissed his original claims in favor of six new claims. Specifically, in the amended petition, he alleged ineffective assistance of counsel at various stages of his criminal proceedings: (1) Mr. de Montreux's failure to object to the special verdict form's request for a finding as to "whether the quantity of methamphetamine was more or less than 500 grams"; (2) Mr. Hamilton's failure to file a motion to dismiss the indictment for a violation of the Speedy Trial Act; (3) Mr. de Montreux's stipulation to Government Exhibit 7; (4) Mr. Hamilton's deficient litigation of Mr. Smith's Fourth Amendment claims; (5) Mr. Hamilton's failure to make a pre-trial challenge to the reliability of the narcotics detection dog's alert to his vehicle; and (6) Mr. de Montreux's failure to appeal the alleged non-transcription of the jury's notes to the court, as well as the denial of Mr. Smith's Fourth Amendment claims. R. at 287. The district court issued a memorandum decision and order denying Mr. Smith's petition after concluding that his counsels' performance was not deficient at any stage of the proceedings and that

Mr. Smith could not establish undue prejudice.[2] *See* R. at 301. The district court also denied Mr. Smith's motion for leave to proceed IFP on appeal, having concluded that he had not demonstrated that his appeal would be filed in good faith. Mr. Smith now seeks a COA to challenge this decision on appeal.

## II

A prisoner may not appeal from the denial of relief under 28 U.S.C. § 2255 without a COA. *See* 28 U.S.C. § 2253(c)(1)(B); *United States v. Mulay*, 805 F.3d 1263, 1265 (10th Cir. 2015) ("The grant of a COA is necessary to appeal [the denial of a § 2255 motion] and it is jurisdictional."). We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Under this standard, Mr. Smith must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack*, 529 U.S. at 484 (citation omitted).

---

[2] On Mr. Smith's request, the district court issued an Amended Memorandum Decision and Order in which it also denied Mr. Smith's request for a COA. *See* R. at 332 (Am. Mem. Decision and Order Den. Mr. Smith's Am. 28 U.S.C. § 2255 Mot., filed Oct. 5, 2021). However, Mr. Smith did not file an amended notice of appeal to include the amended order within the scope of this appeal. *See* Fed. R. App. P. 4(a)(4)(B)(ii). As such, we only consider the district court's original order—which, in substantive respects, is virtually identical to the amended one (with the difference relating to the COA denial).

### III

In his amended § 2255 motion, Mr. Smith alleged ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), at all stages of his criminal proceedings. Specifically, Mr. Smith identified six alleged instances of constitutionally deficient conduct in violation of his Sixth Amendment rights. The district court denied Mr. Smith's petition, as it found Mr. Smith was unable to demonstrate his counsels' performance was constitutionally deficient at any stage of the proceedings or that he suffered unfair prejudice. Because reasonable jurists could not debate the soundness of the district court's conclusions, we deny Mr. Smith's request for a COA.

### A

Under *Strickland*, a defendant "must show both that his counsel's performance 'fell below an objective standard of reasonableness' and that 'the deficient performance prejudiced the defense.'" *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (emphasis omitted) (quoting *Strickland*, 466 U.S. at 687–88). "These two prongs may be addressed in any order, and failure to satisfy either is 'dispositive.'" *Littlejohn v. Trammell*, 704 F.3d 817, 859 (10th Cir. 2013) (quoting *Byrd*, 645 F.3d at 1168).

"[R]easonableness" is measured "under prevailing professional norms," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 688–89. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Prejudice "requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Specifically, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (quoting *Strickland*, 466 U.S. at 694).

## 1

In his amended § 2255 motion, Mr. Smith first argued that Mr. de Montreux improperly failed to object to the jury instructions and special verdict form. Specifically, Mr. Smith alleges that both the jury instructions and special verdict form asked the jury to determine, upon a finding of guilt, whether the quantity of methamphetamine at issue "was five hundred grams or more." Aplt.'s Appl. to Grant COA at 5. Mr. Smith claimed that this language conflicted with the indictment, which alleged that Mr. Smith "did knowingly and intentionally possess with intent to distribute . . . 500 grams or more of a mixture and substance[] containing a detectable amount of methamphetamine." *Id.* at 4. As such, Mr. Smith claims the discrepancy constructively amended his indictment by broadening the possible bases for conviction. *See id.* at 6–7. The district court rejected Mr. Smith's argument, as it reasoned "[n]either the jury instructions nor special verdict constructively amended the indictment. Accordingly, Mr. de Montreux could not have been ineffective for failing to challenge them." R. at 291. We do not find the district court's decision to be debatable amongst jurists of reason.

6

"An indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir. 1988). "In assessing a claim of an impermissible constructive amendment, our ultimate inquiry is whether the crime for which the defendant was convicted at trial was charged in the indictment; to decide that question, we therefore compare the indictment with the district court proceedings to discern if those proceedings broadened the possible bases for conviction beyond those found in the operative charging document." *United States v. Farr*, 536 F.3d 1174, 1180 (10th Cir. 2008).

Here, the district court concluded that neither the jury instructions nor the special verdict form constructively amended the indictment, as the jury instructions and special verdict form narrowed—rather than broadened—the possible bases for conviction. Specifically, the indictment only alleged that the "500 grams or more" of the mixture and substance included "a *detectable* amount of methamphetamine," whereas the jury instructions and special verdict form asked the jury a narrower question of whether there were "500 grams or more of *methamphetamine*." R. at 290; *see also* Aplt.'s Appl. To Grant COA at 4–5.

Thus, the district court reasoned that this "more specific finding—500 grams or more of methamphetamine—necessarily still fits within the [i]ndictment's broader allegation of '500 grams or more of a mixture and substance containing a detectable amount of methamphetamine.'" R. at 290. Put another way, the special verdict form and

jury instructions left no possibility that Mr. Smith "was convicted of an offense other than that charged in the . . . indictment." *United States v. Ray*, 899 F.3d 852, 866 (10th Cir. 2018) (quoting *United States v. Hien Van Tieu*, 279 F.3d 917, 921 (10th Cir. 2002)). In light of this, no reasonable jurist could debate the soundness of the district court's conclusion. Accordingly, **we deny a COA** as to this claim.

**2**

Mr. Smith's second claim is that Mr. Hamilton's pre-trial representation was ineffective because he did not file a motion to dismiss the indictment for a violation of the Speedy Trial Act. Specifically, Mr. Smith alleges that the Speedy Trial clock began running on January 20, 2016 (i.e., the date he was arraigned on the indictment), and by September 18, 2016,[3] 149 days had elapsed—which violated the Speedy Trial Act. *See* Aplt.'s Appl. to Grant COA at 11. The district court rejected Mr. Smith's claim, as it found that a "careful review of the record demonstrates there was no violation of the Speedy Trial Act, and Mr. Hamilton never had cause to file a motion to dismiss on that basis." R. at 291. Mr. Smith has not demonstrated that reasonable jurists would find the district court's assessment of his ineffective assistance claim debatable or wrong.

The Speedy Trial Act "requires that a criminal defendant's trial commence within 70 days of a defendant's initial appearance or indictment, but excludes from the 70-day period days lost to certain types of delay. Section 3161(h) specifies the type of delays

---

[3] After this date, Mr. Smith filed motions to continue which were granted until Mr. de Montreux entered an appearance for Mr. Smith on April 17, 2017, thereby relieving Mr. Hamilton of representation. *See* R. at 292.

8

that are excludable from the calculation." *Bloate v. United States*, 559 U.S. 196, 203 (2010); *see also* 18 U.S.C. § 3161(c)(1). Crucially, 18 U.S.C. § 3161(h)(1)(D) automatically excludes any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on . . . such motion."

The district court correctly concluded that Mr. Smith's Speedy Trial calculations were not accurate. Mr. Smith states that (1) 67 days elapsed between January 20, 2016, and March 27, 2016, and (2) another 82 days elapsed between July 28, 2016, and September 18, 2016—for a total of 149 days.[4] However, Mr. Smith does not explain the relevance of these dates and omits critical context for the purposes of determining whether a Speedy Trial violation occurred.

Mr. Smith correctly notes that the Speedy Trial clock began running on January 20, 2016. However, on March 10, 2016, Mr. Smith filed a motion to continue his trial for three months. *See* R. at 292. At that point, only 51 days had elapsed.

Then on May 13, 2016—while his motion to continue was still in effect—Mr. Smith filed a motion to suppress. *See id.* On September 12, 2016, the district court issued its decision denying Mr. Smith's motion to suppress. *See id.* Under 18 U.S.C. § 3161(h)(1)(D), the time between the filing of Mr. Smith's suppression motion and the district court's resolution of the motion is excluded for the purposes of the Speedy Trial

---

[4] Mr. Smith's calculations appear to be mathematically inaccurate, as only 52 days could have elapsed between July 28, 2016, and September 18, 2016—for an alleged total of 119 days. However, for the reasons discussed *infra*, this error is ultimately irrelevant to the resolution of his claim.

Act. Thus, as of September 12, 2016, no additional time had elapsed under the Speedy Trial Act (i.e., only 51 days had elapsed at this point). [5]

Therefore, on September 18, 2016 (i.e., six days after the district court's decision on the suppression motion) only 57 days had elapsed under the Speedy Trial Act. As such, Mr. Hamilton's decision to not file a motion to dismiss for a violation of the Speedy Trial Act was reasonable. *See United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) ("When, as here, the basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue. If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." (citation omitted)). Therefore, no reasonable jurist could debate the soundness of the district court's conclusion. Accordingly, we **deny a COA** as to this claim.

---

[5] Mr. Smith does not contest that 18 U.S.C. § 3161(h)(1)(D) excludes delays resulting from pretrial motions. Instead, he argues that "delays resulting from a continuance granted by the district court may be excluded [only] if the district court makes the findings required by" 18 U.S.C. § 3161(h)(7). Aplt.'s Appl. to Grant COA at 13 (alteration in original) (emphasis omitted). Because the district court failed to make any specific findings with respect to the delay for his suppression motion, he claims the time should not be excluded under 18 U.S.C. § 3161(h)(1)(D) for the purposes of the Speedy Trial Act.

Mr. Smith is incorrect. The Supreme Court has explicitly stated that any "'delay resulting from . . . proceedings concerning the defendant [i.e., any delay arising under § 3161(h)(1)]' is *automatically* excludable from a Speedy Trial Act calculation." *Bloate*, 559 U.S. at 199 (omission in original) (emphasis added) (quoting 18 U.S.C. § 3161(h)(1)). As such, the district court was not required to make specific findings under 18 U.S.C. § 3161(h)(7) for the delay to be excludable from a Speedy Trial Act calculation.

**3**

Mr. Smith's third claim is that Mr. de Montreux was constitutionally deficient for (1) not moving to suppress Government Exhibit 7—a three-page exhibit listing a series of incriminating calls and texts on Mr. Smith's phone—and (2) stipulating to the admission of Government Exhibit 7.[6]  *See* Aplt.'s Appl. to Grant COA at 15–20.  The district court rejected Mr. Smith's arguments, as it found that "Mr. de Montreux *did* file a pre-trial motion in limine, seeking suppression of Exhibit 7," and, after the motion was denied, Mr. de Montreux's decision to stipulate to Exhibit 7 was "sound trial strategy."  R. at 293, 295.  We do not believe that reasonable jurists would debate either of the district court's determinations.

---

[6]    On appeal, Mr. Smith also argues that he did not consent to Mr. de Montreux's decision to stipulate to the admission of Government Exhibit 7—which he alleges, standing alone, constitutes deficient performance under *Strickland*.  *See* Aplt.'s Appl. to Grant COA at 17–18.  However, this argument was not raised before the district court; accordingly, it is not preserved for our consideration in this proceeding.  *See United States v. Garcia-Rodriguez*, 705 F. App'x 756, 759 (10th Cir. 2017) (unpublished) ("Because [the movant] did not raise these arguments in his § 2255 motion, we decline to consider them here."); *United States v. Knittel*, 562 F. App'x 630, 633 n.2 (10th Cir. 2014) (unpublished) ("[The movant] appears not to have raised this issue in his § 2255 petition before the district court, and the district court order denying his petition does not address this issue.  Therefore, we do not address it on appeal."); *cf. Stouffer v. Trammell*, 738 F.3d 1205, 1221 n.13 (10th Cir. 2013) ("We do not generally consider issues that were not raised before the district court as part of the habeas petition."); *Heard v. Addison*, 728 F.3d 1170, 1175 (10th Cir. 2013) ("We do not reach [petitioner's argument] in this case, however, because . . . we conclude that [petitioner] never raised such a claim, in his petition or otherwise, before the federal district court." (citation omitted)); *Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) (deeming "waived" certain ineffective-assistance claims where petitioner "fail[ed] to assert them in his district court habeas petition").

With respect to its first conclusion, the district court noted that Mr. de Montreux filed a pre-trial motion in limine seeking suppression of Exhibit 7. *See id.* at 293. Furthermore, the district court noted that in the motion, Mr. de Montreux raised the very argument Mr. Smith advanced in his § 2255 petition; namely, that the United States obtained the information for Government Exhibit 7 from a search it had previously agreed not to use or rely on. *See id.* As such, the district court concluded that Mr. Smith was incorrect in stating that Mr. de Montreux was constitutionally deficient for failing to move to suppress Government Exhibit 7. No reasonable jurist could disagree with the district court's conclusion. [7]

---

[7] Mr. Smith also argues that Mr. de Montreux "should have moved the Court for a *Franks* Hearing pursuant to the U.S. Supreme Court's [r]uling in *Franks v. Delaware*, 438 U.S. 154 (1978), in regard to the Search Warrant Affidavit including misleading information and omissions to establish probable cause for issuance of [the] July 29, 2016, Search Warrant." Aplt.'s Appl. to Grant COA at 20. Although the district court did not expressly opine on this argument, it denied all of Mr. Smith's *Strickland* claims. And we believe that no reasonable jurist could debate the district court's decision as it relates to this *Strickland* claim relating to his counsel's failure to request a *Franks* hearing.

Specifically, Mr. Smith offers no evidence to demonstrate that the search warrant application prepared by DEA Agent David Barnett included false or misleading information. Instead, Mr. Smith simply asserts that the affiant had previous knowledge of the contents of his phone, and knew it contained no evidence of criminal activity. *See id.* at 21–22. That bare assertion, standing alone, is insufficient to satisfy the "substantial preliminary showing" needed to entitle a defendant to a *Franks* hearing. *See Franks*, 438 U.S. at 155–56 ("[W]here the defendant makes a *substantial preliminary showing* that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." (emphasis added)). As such, given that Mr. Smith was not entitled to a *Franks* hearing, Mr. de Montreux's failure to request one could not have been constitutionally deficient.

12

The district court also concluded that Mr. de Montreux's decision to stipulate to Exhibit 7 was sound trial strategy. Mr. Smith's suppression motion was denied in a docket text order, which provided that "[t]he government is not prohibited from using Exhibit 7." *Id.* at 294. After the district court's ruling, the parties discussed a proposed stipulation in a pre-trial conference. The government stated that "[i]f we have to prove that [the] phone is the defendant's [i.e., if Mr. Smith did not stipulate to Exhibit 7], then we have to go through things that would demonstrate the likelihood that [the] phone is the defendant's. Those include pictures of marijuana on that phone." *Id.* at 295. Mr. de Montreux eventually agreed to the proposed stipulation, stating that "I don't anticipate that I can contest, under the circumstances and due to [the court's] ruling . . . that the phone or phones found in the car belonged to [Mr. Smith]." *Id.* As such, the district court ruled that Mr. de Montreux's "stipulation to an exhibit (that had already been ruled admissible) to both save time *and* avoid the presentation of further inculpatory information . . . cannot reasonably be considered error, much less error rising to the level of ineffective assistance." *Id.* No reasonable jurist could disagree with the district court's determinations. As such, we **deny a COA** as to this claim.

**4**

Mr. Smith's fourth claim alleges that Mr. Hamilton "provided him with ineffective assistance of counsel by failing to properly investigat[e]" and litigate his Fourth Amendment claims. Aplt.'s Appl. to Grant COA at 25. Specifically, Mr. Smith claims that Mr. Hamilton "failed to properly investigate the facts in regard to the January 1, 2016, Traffic Stop" and "research relevant federal caselaw[] and Utah caselaw." *Id.*

13

at 26.  Mr. Smith's fifth claim further alleges that Mr. Hamilton "did not properly investigate Utah law in regards to Utah's requirement for certified drug dogs" or "secure [an] [e]xpert [w]itness to interpret these findings," and "failed to file a Motion to Suppress . . . on the ground that the Utah Dog Sniff of K-9 Marco is [u]nreliable and the search of [Mr.] Smith's car was without a warrant or probable cause."  *Id.* at 32.  The district court consolidated these claims and found that neither of them had merit.  *See* R. at 296.  We do not find the district court's decision to be debatable amongst jurists of reason.

In reaching its conclusion, the district court first noted that Mr. Smith relied "entirely on vague, summary allegations of insufficient research, investigation, and litigation."  *Id.* at 297.  Contrary to Mr. Smith's allegations, the district court found that "the record demonstrates that Mr. Hamilton's pre-trial representation of [Mr.] Smith was careful and competent."  *Id.*  The district court provided multiple examples of Mr. Hamilton's extensive efforts to provide competent representation: (1) Mr. Hamilton provided Mr. Smith with a memo outlining the range of issues with possible Fourth Amendment claims; (2) Mr. Hamilton filed and litigated a motion to suppress on Fourth Amendment grounds, in which he challenged the length of Mr. Smith's traffic stop; and (3) Mr. Hamilton requested and received certification records for Trooper Withers's narcotics detection dog, Marco.  *See id.*  Indeed, the district court praised Mr. Hamilton for the quality of his representation, stating that the "completeness of the memo [he] filed . . . laid out issues well, and . . . has enabled everyone including [the court] to prepare better . . . ."  *Id.* (first alteration in original).  The district court also noted that "[t]he

suppression hearing was very thorough. . . . A very complete order was prepared and filed." *Id.* at 298.

Given all of these findings, no reasonable jurist could say that Mr. Hamilton's representation was constitutionally inadequate with respect to either of Mr. Smith's claims. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."); *Byrd*, 645 F.3d at 1168 ("We have cautioned that our review of counsel's performance under the first prong of *Strickland* is a 'highly deferential' one. Our case law makes clear that '[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' and that a petitioner 'bears a heavy burden' when it comes to overcoming that presumption." (alteration in original) (citations omitted) (first quoting *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010); then quoting *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994); and then quoting *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000))). Accordingly, we **deny a COA** as to this claim.

**5**

Finally, Mr. Smith alleges that Mr. de Montreux was ineffective on appeal because he failed to challenge (1) the alleged non-transcription of a jury note to the court and (2) the denial of Mr. Smith's Fourth Amendment suppression motion. *See* Aplt.'s Appl. to Grant COA at 39. Mr. Smith also argues that the district court "abused its discretion" by failing to conduct an evidentiary hearing on this sixth claim. *Id.* at 41–42.

"When considering a claim of ineffective assistance of appellate counsel for

15

failure to raise an issue, we look to the merits of the omitted issue.  If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000) (quoting *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999)).

The district court denied Mr. Smith's *Strickland* claim with respect to the jury note.  Specifically, the district court noted that "the court preserved a copy of the jury's note from June 13, 2018; it was simply filed under seal." R. at 300.  Furthermore, the district court noted that "[a] court reporter also preserved the parties' discussion of the note." *Id.*  As such, the district court concluded that "[a]n allegation that the jury's note was not transcribed . . . cannot be the basis of an ineffective assistance claim." *Id.*  No reasonable jurist could debate the soundness of the district court's conclusion.

The district court also determined that "[Mr.] Smith ha[d] put forth no evidence that he could have made a successful Fourth Amendment challenge to the stop and search of his vehicle." *Id.*  Mr. Smith argues that his Fourth Amendment rights were violated when Trooper Withers extended the duration of the traffic stop.  *See* Aplt.'s Appl. to Grant COA at 28–29.  Specifically, Mr. Smith argues that Trooper Withers's Interstate Identification Index check (i.e., a criminal-history check) was inappropriate as it unduly prolonged the traffic stop—which allowed Trooper Withers to screen Mr. Smith's vehicle with his narcotics detection dog.  *See id.*  As such, Mr. Smith argues that his Fourth Amendment claim had merit, and his counsel's failure to raise it on appeal was constitutionally deficient.

16

However, Mr. Smith offers no federal precedent to support his position. Nor could he. In *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citation omitted), the Supreme Court explained that an officer's mission during a traffic stop is both "to address the traffic violation that warranted the stop and attend to related safety concerns." Because "'[t]raffic stops are especially fraught with danger to police officers,' . . . the Court has . . . included 'negligibly burdensome' inquiries an officer needs to make 'to complete his mission safely' among permissible actions incident to a traffic stop." *United States v. Mayville*, 955 F.3d 825, 830 (10th Cir. 2020) (alteration in original) (citation omitted) (quoting *Rodriguez*, 575 U.S. at 356). Among such permissible actions, we have "routinely permitted officers to conduct criminal-history checks during traffic stops in the interest of officer safety." *Id.*; *see also United States v. Burleson*, 657 F.3d 1040, 1046 (10th Cir. 2011) ("[A]n officer may run a background check on a motorist to check for warrants or criminal history even though the purpose of the stop had nothing to do with the motorist's history."). Crucially, the Supreme Court has noted that "the government's officer safety interest stems from the mission of the stop itself." *Rodriguez*, 575 U.S. at 356.

Here, Trooper Withers had a legitimate safety interest—which arose from the traffic stop itself—to conduct a criminal-history check. Therefore, Trooper Withers's Interstate Identification Index check was permitted under our precedent and did not serve to unduly prolong the traffic stop. As such, Mr. Smith's Fourth Amendment claim would not have succeeded on appeal. Given that Mr. Smith's Fourth Amendment claim was without merit, reasonable jurists could not debate the district court's conclusion that Mr.

de Montreux's failure to raise the issue on appeal did not constitute constitutionally ineffective assistance of counsel.

Finally, the district court denied Mr. Smith's request for an evidentiary hearing. Under 28 U.S.C. § 2255(b), an evidentiary hearing is not required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Given that the record conclusively shows that Mr. Smith is not entitled to relief, reasonable jurists could not debate the district court's conclusion. Accordingly, we **deny a COA** as to this claim.

## IV

Finally, we address Mr. Smith's request to proceed IFP. Given that Mr. Smith has failed to present a "reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal," *Caravalho v. Pugh*, 177 F.3d 1177, 1177 (10th Cir. 1999), we **deny** his application to proceed IFP on appeal.

## V

For the foregoing reasons, we **DENY** Mr. Smith's request for a COA, **DENY** his application to proceed IFP, and **DISMISS** this matter.

Entered for the Court

Jerome A. Holmes
Chief Judge